Good morning, Your Honors, and may it please the Court, Monica Miller for the appellant. The answer to a single question resolves this appeal. Is a war memorial cross a non-religious symbol embraced by everyone, even Jews and atheists? If the answer to this question is no, the Court must reverse. For three reasons, the District Court erred in holding that the Christian cross at issue on appeal does not endorse Christianity. For one, the Latin cross is exclusively a Christian symbol. What took so long for it to come up? The history? It's been there for quite a while. There's a lot of reasons why a display such as this might go unchallenged. One of the things Justice Breyer talked about in the case dealing with the Ten Commandments and others, I mean, this thing's been there since 1961, wasn't it built in 24? Yes, that's correct, Your Honor. A long time. That's true. All of a sudden now it has risen to the point it now offends something. So we've been suffering through this all these years, I take it. You know, there is a very strong argument to be made that the longer that a religious display for one religion is up, the more violent of it becomes, not less. And religious minorities in this community have had to endure a religious symbol that closely aligns the government with Christianity. And it takes a lot of courage to bring a lawsuit such as this. I mean, the plaintiffs in our case did receive... You're saying the temper of the times have changed to give you courage to bring a suit like this now, whereas in 1961 you wouldn't have done it. That's, well, two things, Your Honor. Actually the cross itself... It's not exactly like that, but something like that. Yeah, I mean, the cross itself was actually erected in 1925, long before the Establishment Clause was even incorporated into the states. Long before there was organizations such as the American Humanist Association dedicated to separation of church and state lawsuits. I believe the first court case in the Supreme Court involving a religious display wasn't until the 1980s. So the jurisprudence... When was the Establishment Clause incorporated into the states? I think officially 1947, when I say it was the Everson case. Okay. But so anyways, there are a lot of reasons... Next up, you know, the 14th Amendment, when they say this gradual incorporation, when it came in. Right. I mean, you could... I thought it would have been in the first instance, but I got you. Yeah, yeah, exactly. And so you've got the intimidation, you've got the fact that, you know, the incorporation issue and the fact that it simply doesn't put anything in the plaintiff's pockets, and it takes, you know, volunteer lawyers or nonprofit attorneys to do these kinds of cases. So there's a lot of explanations, and again, it really was just a Van Orden factor of a concurrence. And you might also argue that the length of time, looking at it year after year after year, purporting to be a war memorial builds up in offensiveness. Absolutely. And that's my second point here, is that not only is the Latin cross an exclusively Christian symbol, and there's no evidence that it is a symbol for non-Christians' death, but the fact that it's a war memorial sends an even stronger message of exclusion to those who are non-Christian, because those that are being excluded are veterans who have fought for our country that are non-Christian that have to see this cross and think, wow, my military service is less important and less worthy of veneration than that of my Christian peers. If people even recognize it as a war memorial, I don't know that I would limit it to veterans that aren't, that are not Christian. A hundred percent. And that's the problem with the district court's entire rationale, is A, presuming that a reasonable observer who is the passerby even is aware that this is a memorial to begin with. The second problem is that even though the court looked to the overseas crosses in European cemeteries to determine that this evokes some sort of message of secular commemoration, the problem with that logic is, one, those crosses in overseas cemeteries are Christian crosses. And we know this because the Star of David is used to mark the Bail of Christians. And the Jewish Welfare Board protested the use of crosses for Jewish graves from World War I through present. I mean, the plaintiffs in these Establishment Clause cases challenging crosses are normally Jewish individuals and atheists who say that the cross doesn't represent them. And the government took over maintaining the cross here in 1961. That's correct. The commission. And today in America, the cross is a symbol of what? Christianity. There's no evidence on this record that the cross is anything but a Christian symbol. And there's certainly no evidence that it's embraced by other religions. I have a question then. After 1961, I know before 1961, the record is replete with religious types of ceremonies being held at the cross. After 1961, have there been religious ceremonies? Well, when the commission spent, I want to say like $100,000 on renovating the cross, it held a rededication ceremony, rededicating the memorial to veterans of all wars. So it's actually no longer in its current iteration anyways, a World War I memorial, but it's for everyone. And during that argument that the cross is a symbol of World War I, it sort of goes by the wayside then now too, if this is to be for all wars. Okay. Yeah. And that's the way the American Legion treats it too. They hold their annual Veterans Day ceremonies there for all veterans. But of course, it's unlikely that an atheist would want to come and participate in this ceremony with a cross and with prayers. The American Legion ceremonies that take place every year at the cross do include an opening prayer and a closing prayer, which I don't think you can deny is considered religious activity. The other thing was back to the- They still do? Absolutely. And that's in the record? Absolutely. Okay. And when the Maryland National Capital Parks and Planning Commission held its rededication ceremony and invited a Catholic priest to deliver the prayers at the- Isn't the Ten Commandments also an exclusive religious symbol? Actually, Your Honor, it's not. And this was very prominent- There's a couple of commandments in there that sort of indicate that it is. I mean, not worshiping any other god and the sabbath? I mean, what is it if it's not a religious symbol? Well, it's text. And if you parse it out, there's actually several of the commandments that aren't actually religious at all. But more to the point is that in Van Orden, as well as in other appellate court cases, the courts recognize that the Ten Commandments have a separate secular meaning that's tied to our nation's foundation of law and lawmaking, emphasizing that Moses was a lawgiver as well as a religious leader. So you're going to distinguish the Van Orden case for me. That's what you're doing, right? Precisely. I mean, I think there's really no need to even look to Van Orden. The Supreme Court said it was okay in Texas. It was in the same day, said it's not okay somewhere else. Yes. That's correct. What's the difference here? Well, the difference here, it really, I mean, you could say it fits more into the McCreary case simply because we have more evidence of a religious purpose, but we're not really even challenging the purpose here. The fact is that neither case is really that controlling here because this involves a quintessential Christian symbol, not a non-denominational six-foot relative size to all the other 17 monuments in the Capitol Park display, but one overpowering 40-foot Latin cross that was originally installed and conceived by itself in isolation and stood alone for 20 years. It was installed. It was privately constructed. It was maintained from the inception. American Legion gets in, put his little symbol up there on it, and why does that not indicate a secular-type purpose for it? I mean, is it every symbol that looks like a cross, is that, we know what we believe generally that would be, but does that now convert, we can't even make a cross anywhere unless it's religious? Well, no. No, Your Honor. I mean, there's a case from the Fifth Circuit that involved an X-shaped cross, and I believe the plaintiffs were, it was part of the Confederate flag, and they tried to argue that it was a religious symbol, and the Fifth Circuit refused to accept the idea that any, you know, X-shape was a cross, but here it's undeniable that this is a Latin cross and that this is a Christian cross. Its founders said this is a Calvary cross, as described in the Bible, and there's no question that this is seen. Why can't this be fixed? I mean, we've had cases in which there have been courts that deal with this situation, and I mean, you know, things have changed, and your argument, you know, has some pull to it, but why come it can't be fixed? I mean, if a private entity is doing this, it's good. It's just you don't want public monies using it. So why can't you just transfer this over to a private entity, which is where it started from the beginning, and say, okay, county's out of this, city's out of it. Yeah. Court, you don't have to answer this question. We're good. I mean, I think that, well, we would be more than happy, the plaintiffs would be more than happy to see this cross transferred to private property. It's not, wouldn't give us any sort of joy to see it torn down, but it doesn't belong  I don't see how any good law is going to come out of this. We've got cases already. Spring Court itself is already across the board on this thing. No, I mean, I don't think I'm seeing anything out of turn. Everybody knows that. We've got cases in which you're going one way, or you're going the other way, and you just don't really know which way to go. You've got two different tests. Justice Breyer comes up with his own test. It's different from the lemon test. Right. And nobody likes the lemon test, apparently, because you get enough criticism on that. And so you get these specific cases like this, and here we're getting ready to try to make a Supreme Court case. And the question is, do you really want to do this? And what is it going to mean? It may never get there to the Supreme Court, but, you know, it just seems to me this is the kind of case somebody could fix, you know, because, you know, if the county or whoever wants to do this, just give it back or sell it to the American Legion or whomever. I don't know how you move it, though, because it's in a bad spot. Yeah, I think there's... Her client would probably be fine with that. Yeah, I think... That's probably a question for the other side. Yeah, I mean... I want to get your take on it to see if that is fine. It is fine with you. Well, to be clear, it's far more acceptable to us that it be actually physically removed from the median due to the fact that it's been largely associated... It's fine with you. For it to be moved? No, no. Fine for you to take it over, and that's the end of it. Basically, you just would like the city to just find some way to give it back to you. Yeah, well, back to a private... To the other side. I mean, to a private entity. So long as the transfer... You don't really want it. You don't want it where it is. Or take the arms off. You know, I think that a modification, yeah, absolutely, could be an equitable... Compromise position. Exactly. And we know that the government already has sufficient funds invested in this. So I think that any sort of transfer would really have to disclaim completely any endorsement over that symbol. Again, we know that so much funding has gone into it. But I want to also go back to your point about the Supreme Court and how it's looked at this. The Salazar case was the only case where the Supreme Court really has any dicta on crosses. And nothing in that opinion suggests that a war memorial cross such as this represents soldiers or veterans of non-Christian denominations. Justice Alito actually was quick to point out that that lone cross in the desert did not represent the 3,500 Jewish soldiers who died in World War I. And the other justices, Ginsburg, Sotomayor, and I forget the third one, but they agreed with this. And nothing in Justice Kennedy's position contravenes this notion. He just simply observed that there are many crosses in overseas cemeteries. As I understand it, like 49 people, it's sort of honor in that county? Yes. I take it they were all Christians? We actually don't know. There's nothing on the record that suggests that they sought permission from families or- Do you know whether there were any non-Christians from that county that served in the war? We don't know one way or the other, to be honest. I think there was one person who might have-  If you put 49 people up and these are all the Christians, and then if you had others who served in World War I for that county, you got this memorial up, it sounds like to me it might give your case a little bit more up there. I don't think so, Your Honor, because for one, the bushes have obscured this plaque for decades, and the only physical indication of its status is on this plaque that you can't read as a passerby. And under the effect prong, you really have to take into account the average observer, someone who is going to see this, and there's no pedestrian access. But second of all, as I just mentioned, this cross had been rededicated as a memorial to all veterans. And third, other cross cases have involved memorials to individuals, and that has not changed the analysis that the cross still gives the appearance of endorsing Christians generally, as was the case in the Duncan 10th Circuit case involving the individualized memorials for state troopers. Each one had the name of the state trooper across the arms in the size of the font of a speed limit sign. So any passerby would know that that was an individual memorial, yet the 10th Circuit said it still appears that the government is preferring Christians to non-Christians. A bunch of crosses at Arlington Cemetery. Distinguish this case from that one. Oh, well, those crosses are, A, not the dominant feature in the cemetery. There's, I think, about, like, 20 major monuments dedicated to different groups. Two, they're featured in a multi-faith complex next to and immediately representing individual, like, headstones that have all the different religious markers on them. So, for instance, an atheist could use the American atheist symbol. And so in that context, one would expect to see crosses because that's where other people are buried. You don't expect to see a 40-foot Latin cross in the middle of the county's busiest intersection. I think anyone that passes by, maybe it's a little hard to articulate. I know the 9th Circuit distinguished the Trunk case or the Mount Soledad cross from the two Arlington crosses, but the fact is, is that... You say it's the county's busiest intersection? That's correct. Is that in the records? Yes, there's a couple points in the record as to that point. Yes. So I think it's just kind of one of those... I don't want to say, like, a blush test, but, you know, it's just... It's a different thing when it's in a cemetery versus in the middle of a highway. Yeah. It seems to me you're arguing because this is a large Latin cross or a Latin cross, it's violative of the establishment clause. Yeah. We agree with you. Does that mean every cross out there has to come down? Absolutely not. In fact, the defendants have actually pointed to very few crosses that are not in cemeteries that are... Actually, they have pointed to nothing similar to the Bladensburg cross. This is the largest thing that we could see in the record that was on, you know, a government median or government roadway. But each cross case needs to be assessed, you know, in isolation. I mean, not every case is going to be the same, but it does bear emphasis that 23 cross cases have been found unconstitutional, and the defendants are only able to cite three outliers. One is the artifact from 9-11, and two involve a unique insignia. If I may briefly conclude. If this court truly believes that the Latin cross, the quintessential symbol for Christianity, represents everyone, including Jews, atheists, and Christians alike, then it should affirm. But if this court recognizes that the cross, when it's used as a war memorial, gives the impression that only Christian soldiers are being honored, then it should reverse. Thank you. All right. Thank you. DePompeo. Good morning, Your Honors, and may it please the Court. Christopher DePompeo of Jones Day. On behalf of the American Legion, my colleague Bill Dickerson of the Commission will speak with the balance of my time. The AHA is asking the wrong question in this case. The question is not whether the memorial uses a symbol that can have religious significance. The Supreme Court and this Court in Lambeth made quite clear that endorsement of religion does not occur merely because a symbol uses an object that might have religious significance. That allows the AHA to state a claim for an Establishment Clause violation. From there, to actually prove an Establishment Clause violation, the AHA would have to show that the use of that symbol endorses religion. In other words, it sends a message to those in the community that religion has relevance to their standing as a member of the political community. No reasonable objective observer would conclude that a World War I memorial built 90 years ago in the immediate wake of World War I, using a symbol that was uniquely and intimately associated in the minds of those who built it, with the war... Everyone was born 90 years ago when this thing was first built. So wouldn't the reasonable observer driving down the busiest intersection in the county, who sees a 40-foot cross, and even if the bushes didn't obscure this plaque, which they do in most of the pictures I see in the record, could not read the plaque that's underneath as they're flying by, even if the bushes weren't in front of it? And frankly, maybe even if you walked up to it, because I'm looking at a close-up picture of the plaque, and I can't make out all the words on there that that's a war memorial. How is a reasonable observer supposed to view a 40-foot cross with a plaque that... a height on it is only two feet... well, two feet tall, that they can't read? Well, Your Honor, I think it's important to remember who the reasonable objective observer is. The reasonable objective observer is not the average... It's not me. It's... It's not the average member of the community. It's not a passing motorist. The reasonable objective observer, as Justice Kennedy said in Salazar, is a hypothetical construct of an objective observer who knows all of the pertinent facts and circumstances surrounding the memorial and its placement. Justice O'Connor says in Panette that the reasonable observer is a personification of the community ideal of reasonable behavior determined by the collective social judgment. So the question is... So the reasonable observer needs to know the entire context? Yes. You want to go all the way back to when it was first put in? Yes, reasonable observer... Cases are quite clear that the reasonable observer knows all of this. In fact, if you look at Trunk... And all those religious services that were held there and all the things in the record that tie this to religion, Christianity? In reality, Your Honor, the plaintiffs have been able to point to only one single religious event ever held at the memorial in its 90-year history. I think that's actually very, very powerful evidence that the community has only ever perceived this memorial to be commemorative. The record has a lot of e-mails in it from supporters. All of them are in religious terms. Yes, Your Honor. The court of the Sixth Circuit in Mercer County made quite clear that the views of supporters or opponents of a particular display are not the reasonable observer. Again, the reasonable observer is to embody the community judgment about the message the memorial is conveying. How do we get that? If the e-mails from people who are very well-supported, you would think if you support it, and you say it's not religious, you would not send an e-mail saying it is. I mean, if they think it is, what do you think other people think? I think the much more powerful evidence is the objective evidence that we get from the 90 years of history that this thing has stood. Which started with the pledge sheets that people had to sign to donate that said, We, the citizens of Maryland, trusting in God, the supreme ruler of the universe, pledge faith, blah, blah, blah, to the brothers who... I mean, if we consider that, how is it not a reasonable... How would a reasonable observer not take that as religious? Two reasons. Number one, those comments are more a matter of the times that they were stated in. And if you actually look at the full context, not just the sound bites that are pulled out, you see every statement about the memorial consistently is referring to it as a commemorative object to these 49 individuals. But even more importantly, here, the commission only owns the memorial because of a historical accident. The fact that roadways developed around the memorial and made it necessary for the commission to take ownership. And under cases like Sumim from the Supreme Court, any original purpose of the original builders, even if they intended to build a religious monument, which the record does not support at all, could not be imputed to the commission. So you're saying that if something is built by the private citizens, and then the state gets it, or an entity gets it, or a government entity gets it, eminent domain, in this instance, it's okay because they didn't build it. They didn't want to have it. They just acquired it here and left it there. The court would certainly still have to analyze the purpose and effect and entanglement of the memorial. But the Supreme Court in Sumim quite explicitly said that the original purposes of the private builders cannot be imputed as the purposes of the government entity that took ownership of it. It seems to me there's even a question of whether if you did acquire something like this, that's clearly a religious... Can you tear it down? Because cases that say that in and of itself may be a violation. That's right, and Justice Breyer and Van Orden made that quite clear, that courts should be very hesitant to tear down longstanding 9-year-old World War I memorials or any kind of memorial, because it would evince a hostility to religion that the Establishment Clause and Pre-Exercise Clause have been consistently interpreted to avoid. What about Judge Wynn's suggestion of converting this back to private property or my suggestion of chopping the arms off? So with respect to the second, chopping the arms off, I think that would completely disfigure the memorial. Well, better yet, what would be your way to fix this problem? I mean, I don't need to suggest anything for you to do, but there are cases like this in which, you know, you've got this battle you're fighting and you're wondering... You can kind of see where this is going in the future as this thing continues and its direction is going. Why would you fight a battle like this if there's a way you can, you know, preserve it and move forward with it? I'm sorry. Your Honor, there are no cases like this that have a consistent 9-year history of non-religious use of the memorial. Well, there are cases in which people have had crosses and other... Right. ...and they've been transferred over to a private entity, is what I mean. We also think the Supreme Court has been quite clear in Salazar, particularly in Salazar, that a memorial like this would survive the Constitution, that the use of a cross shape evokes not just a religious identification, but also fields of crosses in foreign cemeteries. We think the law is clear that this memorial, if any cross memorial stands, it has to be this one. What was the last thing? Fields of crosses in foreign cemeteries? And that's what we... Are those Jewish ones out there in the middle of it, the little stars of David II? Certainly those are there as well, but the builders here in 1918... That doesn't mean it's a symbol for all or everybody. It doesn't have to be. A symbol for the Christian soldiers. In reality, Your Honor, in this case it's a symbol for those 49 particular men who died. It's actually not a symbol for any other... We can't see their names on this cross. We can. Yeah, on this cross. Because the plaque is so weathered, it's for most of the pictures in the record obscure it with bushes that I assume were cut down after this lawsuit was filed. And people can't... There's no pedestrian access. You can't walk up to it to even read their names. Their names perhaps are read at these services that you say have a history of being non-religious. Is this accurate? On Memorial Day of 1922, the post held memorial services around the unfinished cross, at which a church call occurred, a Christian chaplain led prayer, and the audience sang, Near My God to Thee. Yes, but that was still a commemorative service. It was not religious. It's not a religious service. It was a service for Memorial Day. As Town of Greece makes clear, the mere use of prayer or something like that in the context of a legislative session doesn't turn the legislative session into a religious service. It doesn't change the character. It's still a legislative session, and using a prayer and invocation, which in the military is a traditional use. The Army actually has a policy, it's cited in our brief, for when prayer is appropriate. It certainly doesn't change a memorial service into a religious service. But with respect, Your Honor, the several facts that you just suggested are actually not borne out by the record. The memorial is accessible to the public. How is it accessible to the public? There is deposition testimony from a commissioned lieutenant, a police lieutenant, who says it's completely open. That's on page 2200 of the joint appendix. Why did the county take it over? Because it became in the median of a highway. Because of a public safety concern. Because it's not safe to have a private entity owning the median of a public roadway. But the memorial is actually used at least twice a year for veteran services. How do they use it? Do they close the roadway when they have the service? Police are there. They don't close the roadway, but they do allow pedestrians to cross. So in order for it to be safely publicly accessible, police have to be there. You can't just stop your car and run across the busiest intersection in the county, and that's a pretty busy county. First of all, I actually do not know that it's the busiest intersection in the county. I don't think that's in the record. Maybe you can tell us when she gets back. Sure. The memorial is accessible. You can cross the road to get there. There's a parking lot right by the Battle of Bladensburg Memorial, which is just to the north. There's also a large shoulder on the side of Route 450 that you can pull over and park at. I've been to the memorial both during a Memorial Day service and not on a Memorial Day service, and you can cross the street and you can access it and you can read the plaque. And again, we need to go back to what the reasonable objective observer would know. We have to assume... You have to go up to it to read the plaque, right? I will say on Monday I drove by and I could read the first few words of the plaque. Now I know what the plaque says. Because the bushes are not there anymore after the lawsuit was filed? No, the bushes were taken down in response to the AHA's original complaint, which was an effort to accommodate the AHA's concern. A reasonable one, I think. The memorial is completely accessible now. The plaque can be read. And again, we need to go back. The most powerful evidence of the effect on the community, the message perceived by the community, is the fact that in the 90 years that it stood, it's only ever served as a World War I memorial. It's only ever been used that way. And the community responded to the memorial not by creating other religious monuments around it, but by creating other commemorative and war memorials around it. Is it commonly understood that the cross is a World War I memorial? I'd never heard of it before this came up. It is. And there is plenty of evidence in the record that... That means it's not commonly understood. It just shows you I don't know stuff. Yes, in fact, both plaintiff's expert and defendant's expert agree. This is the cover of the plaintiff's book, Remembering War the American Way. It uses crosses and stars as a symbol of... I always thought it was commonly understood a cross was a crucifixion symbol. Certainly the cross originally took on meaning as a religious symbol, but the cases have been clear. Alvarado, the case from the Ninth Circuit... So someone who wears a cross around their neck now, they're honoring World War I veterans? No, not necessarily. Potentially, but not necessarily. You got one in front of your church or you got one at your home for Christmas or something, they're honoring a World War I veteran? Not necessarily. It's possible, but probably not. I'm not trying to be facetious. That's why I say Ben Orton gave you an idea. Why don't you find a way to alter this thing or transfer it privately? You think the justices wanted to answer that question? And I'm not saying we will answer this question, but I'm saying there are legal issues out there that you can answer, but there's really no good answer to this situation here, and that's why I say just don't get it why you won't look at some way to resolve this without coming to that, because to make those kind of arguments, it's been there 90-some years where the cross has been in existence for 2,000 years. There's thousands of years before you even got there, and all of a sudden you now say it's a World War I memorial, and it may well be commonly understood for those who do a lot of reading on that, and I might have seen it somewhere, but I've never looked at one, and I'm not the reasonable person that you're talking about, but I think most people have looked at it and said, that's a World War I symbol right there. Two responses, Your Honor. Number one, I think the record is clear that the cross does have significance as a World War I memorial. In fact, the two primary Dr. Winter's report suggests that. What country? Are we talking about in foreign countries or the United States? No, the United States. Within 40 miles of this memorial, there are four cross-shaped World War I memorials, including two in Arlington National Cemetery. The two most prominent World War I memorials in Arlington are freestanding crosses, indistinguishable from this case. And plaintiff's expert agrees, repeatedly, in objective publications outside of this case, that a cross was a recognized symbol for World War I. Was it ever officially declared to be such, or did someone just start putting it up and say, this is the symbol for World War I? This memorial certainly was privately donated, but if you look at the congressional record, there is evidence of the fact that when Congress sought to change the temporary crosses that were marking graves in the foreign cemeteries. What did the cross mean for World War I? What in World War I caused that to be a symbol for World War I? It's precisely because soldiers over there, because of the nature of the war, were seeing every day, fields and fields of these temporary crosses, and it became an indelible image in their minds of the losses of World War I. But the origin of it, I'm trying to get the reason, I mean, sometimes you'll have it, like Iwo Jima, you've got the guys putting the flag up, I can see that. What caused this to be a symbol for World War I? It was that symbolism, it was the fact that pictures were coming back with these images, it was the fact that the poetry of the time was reflecting this. Why were the images there? Is it not? I mean, I guess we're going around. It seems obvious to me that even World War I, the reason they had it was a religious symbol. But Alvarado, the Ninth Circuit's case and the Supreme Court and many other cases has been clear that a symbol that can have religious significance can also acquire secular... It was more than significant. It is THE Christian symbol. Don't you agree? How can you not agree that a cross is THE Christian symbol? And I don't disagree with that, but a symbol that can have religious significance can also acquire secular significance by an association with a secular... I would hope you don't water it down too much. Precisely what happened. I kind of think a cross is a Christian symbol. I think maybe many of your clients do too. And I don't think it has a secular meaning. That's just a personal side, but I actually think it's kind of offensive to think of seeing a cross as just a secular symbol of something else. I actually think it's not good. But I got your point. You're making your point. You want to have a cross up there, but you want everybody now to not look at it as being anything other than... That's just an old cross. It doesn't mean anything. It doesn't have any significance other than World War II veterans. It has nothing to do with Jesus Christ. It has nothing to do with crucifixion. It has nothing to do with Christianity. Do you really think your clients believe that or want that to happen? My clients are not the reasonable observer. The reasonable objective observer needs to interpret... I will bet you you go and ask them and they're going to be unreasonable on that. But my point, again, I implore you. Look at this case when the Van Orden gave you an idea. I think you ought to figure out a way to not put us in this situation. We will answer it. I just think. That's just my opinion. Your Honor, all I would say is that I think the Supreme Court in Salazar was quite clear that there are some uses of cross shapes to memorialize those lost in wars in which that will be constitutional. We think if there is ever a case in which that is true, if we take that seriously, it has to be this case. This case is unlike any others in that for 90 years the memorial has only been used for commemorative purposes. There has only ever been one. There is no history of any kind of religious or Easter services which you see in every other case the plaintiff has cited that involves a memorial. And the community has responded consistently time and again to the memorial by adding other secular symbols of commemoration around the memorial that reflect and reinforce its commemorative message. If the reasonable observer is the personification of the community ideal of reasonableness and the collective social judgment, that 90 year unbroken history has to be the most persuasive evidence of what the community perceives as the message of this memorial. And so for that reason we think the law is quite clear that this memorial needs to remain standing. Additionally, Your Honors, I'm sorry, I've gone over my time. I apologize and we'll go if there's no further questions. Mr. Dickerson. May it please the Court. William Dickerson on behalf of the Maryland National Capital Park and Planning Commission. The commission is a bi-county state agency in Maryland. It has responsibilities in Prince George's and Montgomery counties. In Prince George's County those responsibilities pertinent to here include planning, parks and recreation and part of that is historic preservation and arts. And what we're dealing with here is the commission, as you have heard already, received this only after State Highway, then the State Roads Commission condemned the land because of highway development purposes and then ended up with it after that. The commission has been involved in, has had no religious involvement, no religious activity. You've been maintaining this cross. Correct. And you have money set aside to maintain it. Let me just ask, maybe I'm just trying to this is just curious to me when I see cases of this sort and I'm beginning to figure out, you've got the governmental entity, the commission here, but I know there are religious groups who are looking at this too. And I'm thinking if this But your argument is this is a secular symbol. It doesn't mean anything. I mean that's basically it, right? We believe it means a lot. It's not a religious symbol. This is not a religious cross. You're saying that, right? Well, it has more than one meaning. Is it a cross that represents crucifixion in Jesus Christ? It's a cross that represents the commemoration of a grave. That wasn't my question. I get that. But I don't want to leave this because I want to deal with this because I don't understand it quite frankly. That if this is the purpose that if you maintain that this is secular then I suppose you'd have no problem with putting a Jewish star on it or a crescent for a Muslim symbol because it's secular. It doesn't mean anything. Would that be permissible and would you have no problem with that? Well, there's a historic aspect of this particular monument and what are things to be added to it I guess are a different question. No, my question is not different. My question is direct. I take it the commission would have no objection to there being a Muslim symbol put on this cross. There's a historic preservation issue here. Because all you're interested in is the preservation of it but if the preservation of it would alter it somewhat, which Van Orden says if you alter it or make it something non if you really think it's not secular then make it not secular. If you put all the religious symbols up there everything from Hindu, everything else on this cross you'd be okay with it and that would satisfy it, wouldn't it? I'm not sure whether it would or not but I can say that Van Orden understands that there's religious content. The question is would you? That would be a question for the commissioners in a proper session to be vetted. I don't know that there's any impetus to do that. The answer to my question is this is a secular symbol. There is a secular aspect to the symbol. Is there some religious connotation or content to it? The cases, Van Orden and the others say it's not the role of government. A cross that you have to have to have a memorial for the war memorial. In other words, must that cross conform to something like the United States flag? You can't just put another star up there and add another stripe on it. Does a cross have to be a blank cross or can it have stuff on it to be a war memorial? This is a particular war memorial that it was put together at a particular time that has historic and artistic significance. It generally is a war memorial cross and my question is, which seems obvious, the answer is no. It doesn't have to conform to any particular thing because you got up there a circle that's pretty much in the style of the American Legion. It's their symbol. So you can put something on this cross. There's nothing up there that nothing says it has to just be a blank cross or has to have World War I on it. It can put anything you want on this cross. Again, I can't speak to the historic preservation and the feasibility aspect of it and my client would actually have to fill the way in on that. I didn't ask you to try to speak to anything specific. I'm asking you to speak to the facts of this case that what this would inform a reasonable person to see is that you can put anything you want on that cross and call it a war memorial. So you could put a star of David up there if you wanted to. You could put a Hindu symbol. You could put all kinds of stuff up there. If you can put that American Legion up there what's the limit? There's no particular style that this cross has to be in. Theoretically, no. The fact that there may be religious content or connotation to the cross, the Supreme Court and Van Warden just... Let me make sure. Religious content to a cross? You think that a cross is just a religious content? No. There wouldn't be a case if this were not a cross. Just because there is religious content or partakes of the religious in the words of Justice Breyer does not mean, as he says, for the government to purge everything that partakes of the religious out of an object like this could evince the hostility to religion that is precisely what the Establishment Clause was intended for more traditions to eliminate. I submit, I would say that the cross almost universally certainly in the United States, when it is viewed as a symbol of the crucifixion of Jesus Christ that would be my take on it. And when one characterizes it as simply having religious content then those who follow that have got to be feeling that cannot possibly be the case. It is much more than a religious content. I would agree with you, but within the context of this case, that's what's analyzed under the authorities whether it partakes of the religious. Rather than a reasonable person who's going by it is going to view it as such. Well, it's the reasonable observer who has the entire context of the document, of the, of it. And you're going by that cross as Judge Thacker has indicated at 70 miles or 65 miles an hour and you can't see those names down there and you can't even see that star that's in the middle that's American Legion on it. And all you see is this big cross right here. That's your content. Well, the reasonable observer has the entire history and context and I will say that I would invite the court's attention to the exhibit, the supplemental appendix that shows all of the context, the historical nature of the area, all of the different monuments and the fact that there's a balloon park here that has a parking lot from which you can easily walk across and access the median which I've done a number of times myself and all sorts of people have done that. There is a parking lot there. You can park and just walk across the street. You would walk past a, the Bladensburg, Battle of Bladensburg Memorial that is 17 feet and wider than the Peace Cross. I just need to distinguish. I'm trying to make some sense out of what this is all about in terms of symbolism. If you had a Noxus symbol and it was out there I'm sorry, I didn't hear you. The symbol of the Noxus out there and it had been out there for 50 years and had somebody's thing on it. Do you think anybody would not see that as being a symbol of the Noxus? No, but obviously that wouldn't be consistent with our Establishment Clause tradition. You don't think that the cross is recognizable for Christianity as the Noxus symbol is for Noxus? It's recognizable from the standpoint of Christianity, but as Van Orden said Even more so would you not say? Yes, probably. But at the same time the, as Justice Kennedy said in Salazar, it does evoke the overseas crosses row upon row. And it also, you know, there's a history here that it was always to commemorate. And there hasn't been any religious involvement and activity on the Commission's part. And the Commission only got it as a result of the highway development. And you know, frankly for the Commission which has a historic preservation mission, an arts mission and, you know, the mourners who put together this monument one of whom said that she considered it the grave site of her son who died in battle. For the Commission to knock it down because of what partakes of the religious in the words of Justice Breyer we believe would evince a hostility towards religion that is at odds with the First Amendment and the Establishment Clause. And I believe my time has expired. If there are no further questions. Thank you. Thank you. Okay, I have a few points. For one, the reasonable observer test. The test that they're citing comes from Tenth Circuit precedent as well as Justice O'Connor's concurrence in Panette. That's not the Fourth Circuit's articulation of the reasonable observer. In Lambeth, this Court made clear that the observer under the effect prong of the Lemon Test is different from the purpose prong and looks to the display only. In other words, this Court said that we do not look to the origins of the display in determining what a reasonable observer perceives. Some say we should use the Lemon Test. Some say it's Justice Breyer because he had the narrowest opinion of Van Orden as a test. And then you've got a Trump case out there. T-R-U-N-K. Trump case out there that says that you should put both of them together. Right. Well, I do not think that Van Orden just has any application here. Six cross cases were decided since Van Orden and all of them applied Lemon, not Van Orden. People think Justice Breyer's opinion is controlling opinion in that case. That's correct. I mean, it can be controlling, but that doesn't make the Ten Commandments case applicable here just as much as we're not saying that McCreary is applicable here. It's a Ten Commandments case which involves a display that has this dual meaning tied to our nation's history. And the inverse relationship was true with respect to the size of the display in the neighboring monuments. Here, the cross was the first thing put up and it is the absolutely most dominating feature in the entire area. In fact, the defendants call this the Peace Cross area. They don't call it the Vietnam War Memorial area. This is the Peace Cross area because of the prominence and the size of the cross and the fact that it was stood alone for virtually its entire history. It's alone on the median, whereas the Ten Commandments in Van Orden was part of many other displays of equal size. It wasn't the first display there, hardly. I think it was like the 11th display. It was adjoining like there was pathways adjoining all of the different monuments and it would take you through a tour. There's nothing connecting these. You see maybe one or two if you're coming from the D.C. side. Very small, very far away from the cross, and now you see a new one maybe off to the side. Depending on which way you're coming, you might not even ever see a plaque. If you go around the back side, you might see a word, but you don't see the plaque unless you're coming around. The second thing is, but yeah, so the reasonable observer in many cases is a passing motorist if, under the effect prong, if the display is off the side of the road. That was the case in the Duncan case in Tenth Circuit as well as Gonzales which also involved kind of a median cross. In even Trunk, most of its effect prong analysis, while it did look a little to the Van Orden factors, still  by is not going to see all the memorial plaques at the base of the cross. What do you think the cross means at that site? I think it means two things. I think it means Christianity, and it means commemorating Christian soldiers. They don't have to be... Christianity? You think it means Christianity? Yes, absolutely. I mean, it's a cross. It's a Latin cross. It's a Christian cross. The cross means death and eternal life. It does to Christians. There's no evidence. Okay. That's what you said. What is it? This is... Is this not a place where we're commemorating people who died? This is not a... Is it not a place we are commemorating people who died? It has... It is used for Veterans Day ceremonies, but it's not a cemetery. You could formulate a yes and no answer to that. Sure. Yes. What is it? Yes. Yes. Yes. But... Is it also a place that there's eternal vigilance in the life given to the life that still remains in terms of our freedoms as a nation? I'm not sure if I understand. I'm saying is it a place where we remember those who died so that others might live? Um... You know, I don't know. I... But then you don't know that? Then it's hard to talk about the context of what the cross means at a place that commemorates people who died and commemorates a place that people sacrificed their life that others might live. Correct? Well, it's a median. It's a highway intersection, so it's not... I know where it is. The question is, you have... We've gone on about the cross and what does it mean. Yes. But aren't we talking about the context of where it is? It is death and an eternal life and sacrifice. Is it not? I think I'm having an issue with... The predominant aspect of where it is and why it is where it is. Is it not? It's where it is for its prominence. I mean, we have the evidence that there was... Is it not to commemorate those who died? Yes. And those who made sacrifices that all of us, now some 90 years later, can still enjoy? Sure. What we call freedom, right? Correct? Sure. Alright. So, to that aspect of a cross, does it not meet that predominant purpose of that? Well, for one, the purpose of the cross is not at issue. This is only the effect. It's not at issue? The purpose is not at issue? No, Your Honor. There's three prongs to the Lemon Test. The plaintiffs have appealed the... The Lemon Test. We're talking about, in terms of the test of the First Amendment, whether or not we're establishing religion. Yes. Because we use a symbol that has a lot of tradition and a long time have represented the very reason why we're commemorating in the purpose death and sacrifice that others might live. Now, you want to put, well, this means Christianity broader, but then that would take every reference to a cross. Wherever it is, it means full-blown supporting religion. For example, we opened our court today. We said, God save this honorable court. Did we? Yes. And that was because we represent God in the sense of the progenitor of order society, don't we? We don't do it because we want everybody to be a Christian or to believe in God, but because in that aspect, it's the order that is ordained by God, and courts represent that as a symbol. It does not. It's hard as an atheist to accept that, so, but I... But, no, I'm not asking you to accept about proselytizing. I'm just talking about and it's got to be in a context in which it's you. Right. And I think the problem is every court has recognized that a cross war memorial, all seven cases involving cross war memorials, recognize that they served a commemorative function, but that is a distinctly sectarian Christian message. It gives the impression that only Christians are being honored. There's no evidence that the cross is a symbol for a non-Christian's death, and this is evidenced by the Star of David. The defendants point out that the expert witness testimony says that, yes, the cross was a common symbol. It was a principal symbol in overseas cemeteries, but the Jewish Welfare Board was adamant that the cross did not represent Jews, and it was at Congress testifying before Congress that it could not use the cross as a default war memorial, or the marble slab did not represent the Jews that died for World War I. And this is, again, what Justice Alito recognized. I think they're overreaching in their interpretation of Salazar, which didn't involve the substantive Establishment Clause issues at all. Justice Kennedy made clear that due to the procedural posture, the case was ill-suited for categorical rules and broad pronouncements, meaning he didn't intend for his words to go beyond the case. The Ninth and Tenth Circuits both had a chance to evaluate war memorials, or rather memorials generally, and crosses, taking his view that the Latin cross remains a predominant symbol of Christianity and that there's no evidence whatsoever that it is widely embraced, or even embraced at all, by atheists or Jews or other non-Christians. And so I think taking that into account, I don't think that Salazar stands nearly for what they're contending it stands for. It really is a dicta case about a land transfer statute, and there's dicta on both sides saying that even if this is evoking rows of crosses, let's not forget the Jews. Let's not forget that there's a star of David marking their graves. It looks like I'm over my time, but if you have any other questions? Thank you. Thank you very much.
judges: Roger L. Gregory, James A. Wynn, Jr., Stephanie D. Thacker